(No. 6077.   July 20, 1934.)

W. D. HUFFAKER and IVALOO JEPPSON, Respondents,
v. BOARD OF COUNTY COMMISSIONERS OF BON-
NEVILLE COUNTY, STATE OF IDAHO, Appellant.

[35 Pac. (2d) 260.]

Alvin Denman, for Appellant.

A. A. Merrill and O. A. Johannesen, for Respondents.

GIVENS, J.—Appellants pursuant to section 30–1204, I. C. A., January 9, 1933, fixed the salaries for the various deputies and clerks in the county offices, that of the clerk in the probate judge's office being set at $600 a year. Thereafter the probate judge filed a written protest against the amount allowed for his clerk.

February 17, 1933, pursuant to section 30–1205, I. C. A., the board fixed the final budget at the amount above set forth, whereupon respondents, the probate judge and the probate clerk respectively, appealed to the district court urging that the board had abused its discretion in reducing the salary of the clerk of the probate court from $95 (which it had been during the preceding biennium) to $50 per month.

This appeal is from the judgment of the trial court reversing the board.

Evidence was introduced by both parties as to the salaries of other clerks, deputies and bookkeepers, as fixed in the budget, all except the county superintendent's and the prosecuting attorney's stenographers, which were the same as that of the clerk of the probate court, in sums ranging from twice to approximately three times that fixed for the clerk in the probate court's office.

The board's theory as disclosed by the evidence was that the clerk in the probate court need be employed there only half time, and the other one-half could be used in the prosecuting attorney's office or the county superintendent's office, in which event the salary would have been at the rate of $100 per month. The evidence further shows that the respondent, Ivaloo Jeppson, was employed by the county, as probation officer, at a salary of $15 per month.

The evidence covered the field of salaries of similar officials in other counties, and the relative amount of work required of the clerk of the probate court and other similar positions, both in Bonneville and other counties in the southern and southeastern part of the state.

Respondents concede that unless the board had abused its discretion in fixing the salary, respondents were entitled to no relief in the district court but urged that the evidence shows such abuse of discretion.

While it may be conceded that the evidence is sufficient to have justified the board in either fixing the salary of the clerk of the probate court as it did or in fixing it as requested by respondents, such divergent justified possibilities do not justify the inference the board abused its discretion in the type of proceeding here under consideration.

The gauge of conduct herein as laid down in *Criddle v. Board of Commrs.*, 42 Ida. 811, 248 Pac. 465, being that an abuse of discretion occurs only when the tribunal or board charged with its exercise " 'exceeds the bounds of reason all the circumstances before it being considered' " and:

" ' . . . . the court should not revise their action (the board's) in the absence of clear evidence of such manifest

abuse of power and disregard of the statute as to show that the board failed to exercise a legal discretion, . . . . ' ' ' ''

Clearly if the board could have exercised their discretion either way, to exercise it either way, would not be an abuse, and, that is all that can be said here, and as further stated in the opinion:

''The question is not what we (the court) think these salaries ought to be or what the able trial judge thought they should be, but is rather, all the circumstances being considered, whether the order of the board clearly exceeded the bounds of reason and constituted such an abuse of power as to show that the board failed to exercise a legal discretion.''

The responsibility of determining a just and sufficient salary, taking into consideration a laudable desire for legitimate economies, adequate service to the county and public, just compensation to the employee, and due regard for the rights and interests of the taxpayers, rests on the board, subject to control, by the courts for abuse, and, the evidence herein does not show the board has in this case overstepped the bounds of a reasonable discretion.

Judgment reversed with instructions to reinstate the order of the Board of County Commissioners.

Costs to appellants.

Morgan and Wernette, JJ., concur.

HOLDEN, J., Dissenting. — January 9, 1933, appellant Board of County Commissioners adopted a preliminary budget among other things, tentatively fixing the compensation of clerk in the office of the probate judge of Bonneville county at $50 per month. The compensation for several years prior thereto had been $95 per month. February 17, 1933, appellant adopted the preliminary budget, thus finally fixing the clerk's compensation at $50 per month. Both the probate judge and the clerk appealed to the district court. That court heard testimony, admitted documentary evidence, made findings of fact, conclusions of law, and entered judgment

in favor of respondents and against the board directing that the order of the board so fixing the clerk's compensation, be modified by increasing such compensation from $600 to $1140; in other words, from $50 per month to $95 per month, from which the board appeals to this court.

The assignment of errors, taken and considered as a whole, appear to present the single question, which I deem to be decisive, as to whether the district court erred in holding that appellants abused their discretion in fixing the compensation of the clerk of the probate court of Bonneville county at $50 per month.

Appellant Board of County Commissioners, in fixing the compensation of the clerk, acted under "The County Budget Law," title 30, chapter 12, I. C. A.

In determining whether the lower court erred in adjudging that the appellant board abused its discretion in fixing the compensation of the respondent clerk, some consideration must be given to the question as to whether the legislature did, or did not, by the enactment of the County Budget Law, intend that thereafter county commissioners must, in the exercise of *quasi*-judicial discretion, be governed by the documentary evidence submitted to them by county budget officers, rather than, as formerly, acting largely, if not solely, upon information coming to them by reason and on account of the performance of their general duties as county commissioners, necessarily involving much undependable hearsay.

The matter of fixing the compensation of appointive officials of the several counties, involves the performance of a most important public duty, vitally affecting county governments throughout the state, justifying, I conclude, a complete, even though rather lengthy, statement of applicable law in force at the time the County Budget Law was enacted, as well as a like statement of the applicable provisions of that statute, for purposes of comparison and clarification, as well as for the purpose of determining the legislative intent in the enactment of the County Budget Law.

The 1899 session of the legislature (1899 Sess. Laws, p. 405) enacted what afterward became popularly known as the "Salary Bill," the same being approved March 7 of that year. Section 3 of the "Salary Bill" (later sec. 3699, I. C. A.) made it the duty of boards of county commissioners to fix the annual salaries of the several county officers at not less than the lowest nor higher than the highest amount fixed by that section, now section 30–2606, I. C. A., and, while boards may no longer, under said last-mentioned section, in its present amended form, fix the salaries of prosecuting attorneys (as they could under section 3 of the "Salary Bill"), and while, in some instances, the minimum and maximum salaries of county officers have been changed by amendment, section 30–2606, *supra*, is, in all other respects, identically the same as said section 3, *supra*. The only statutory requirement was, that boards *fix* the salaries of county officers either at or between certain minimum and maximum amounts, but boards were wholly without power to examine any officer or employee of the county concerning the adequacy of the salaries they were required to fix, nor did the statute make any provision whatever for supplying pertinent information which boards could consider or upon which boards could act in fixing salaries. Section 3, *supra*, covered only the matter of fixing the salaries of county officers; it did not, nor does section 30–2606, *supra*, cover the matter of fixing the remuneration of deputies, assistants or clerks. Section 4 of the "Salary Bill," now section 30–2607, I. C. A., authorized boards of county commissioners to fix the remuneration of deputies, assistants and clerks. Section 4, *supra*, merely authorized the boards to fix the remuneration, but, like section 3, *supra*, did not require investigation nor provide for supplying boards with either adequate or any information for their consideration in fixing the remuneration of such county employees.

In 1927 the legislature enacted a County Budget Law, title 30, chapter 12, I. C. A. The County Budget Law provides that the county auditor of each county of the state

shall be the budget officer of his county. It requires that each year, on or before the first Monday of November, the county budget officer shall notify, in writing, each county official, elective or appointive, to file with him, such budget officer, on or before the third Monday of November thereafter, an itemized estimate of both the probable revenues of and expenditures by the particular office, department, service, agency, or institution, during the succeeding fiscal year. The statute requires that the estimates of probable expenditures shall be under two classifications, to wit: First: "Salaries and wages," which shall show the salaries of officers and employees as fixed by law, or by resolution of the board of county commissioners, and also an estimate of the amount required for intermittent and nonsalaried employees; and second, "Other expenses," which shall show in detail the probable expenditures listed under the following headings:

"a. Services, other than personal.

"b. Materials and supplies.

"c. Debts, refunds and indemnities.

"d. Rents, contributions and fixed charges.

"e. Capital outlay, equipment, lands, buildings, etc."

The estimate and report from each county official, elective or appointive, to the county budget officer, must also show, among other things, the entire revenues and expenditures under each classification, and subdivision thereof, for the two preceding fiscal years.

The County Budget Law also provides that if, for any cause, said estimates and information are not filed with the budget officer in proper time to be included in the suggested budget to be thereafter prepared by the county budget officer and submitted to the board, then that the budget officer shall prepare an estimate of expenditures for any such office so failing to file its report.

The County Budget Law further provides that upon the receipt of said reports from each county official, elective or appointive, by the county budget officer, or the preparation of the required report by such budget officer, if, for any

cause, any county official fails to file such report, said budget officer shall then prepare and file a suggested county budget for the ensuing fiscal year. It is required that the suggested budget shall show, so far as practicable, the complete financial program of the county for the ensuing fiscal year, by showing all contemplated expenditures and the source of revenues with which to pay the same, setting forth: First: Revenues from sources other than taxation, giving each fund, office, department, service, agency, or institution, separately. Second: Expenditures from the various funds. Third: The proposed expenditures for each office, department, service, agency or institution for "salaries and wages," and for "other expenses" for the ensuing fiscal year, and a comparison with the expenditures for the same purpose for the then current fiscal year, to the second Monday of October, and also for the two previous fiscal years. That suggested or proposed budget, as well as and including the said reports from each county official, elective or appointive, to the county budget officer, must then be submitted by the county budget officer to the Board of County Commissioners of his county on or before the second Monday of the following January, at which time the board is required to convene and *consider* the said reports and proposed budget in detail.

Thereafter (due and proper notice having been published and given), and on the second Monday of February, the board is required to meet for the purpose of hearing any and all objections to the proposed budget theretofore noticed for hearing and tentatively adopted, as well as for the purpose of adopting a final budget. The statute also provides that at such hearing the board may call and examine any officer or employee in charge of any office, department, service, agency or institution of the county.

It will be noted that under the County Budget Law, boards are supplied with documentary evidence of the actual compensation being paid to all deputies, assistants and clerks employed by the county, as accurately itemized and set forth in the reports of the county officials to the county budget officer, as well as in the suggested budget, all of which are

submitted to the board, and which reports and budget the board is required to *consider* in fixing compensation. Not only that, the preliminary budget so submitted, must also set forth for the information and consideration of the boards, a comparison of expenditures of the then fiscal year, for the same purposes, for example, compensation of deputies and clerks, with the two previous fiscal years, and if a board requires information in addition to that supplied by such documentary evidence, it is authorized to call and examine any officer or employee in charge of any office, department, service, agency, or institution of the county, from which it must follow that the legislature, by the enactment of the County Budget Law, must have intended that thereafter, in fixing compensation to be paid deputies and clerks, commissioners must fairly and impartially weigh and *consider* the documentary evidence so fully and carefully provided for their use by the very complete provisions of that statute; otherwise, that documentary evidence serves no useful purpose.

The County Budget Law not only places that documentary evidence in the hands of the commissioners, but it also requires them to *consider* it; whereas, prior to the enactment of that statute, as stated by this court in *Criddle v. Board of Commrs.*, 42 Ida. 811, 248 Pac. 465, "in the absence of a requirement that in fixing such salaries the board must take any specific facts into consideration, it may be reasonably concluded that the legislature intended that the board would, from its own knowledge of the county's business, and from a full consideration of all the facts and circumstances relating thereto, fix the salaries pertaining to such county officers within the legal limitations and at such sums as would be fair and just to the holder of the offices on the one hand and the county on the other." Inasmuch as the County Budget Law, *supra*, provides for placing such documentary evidence before boards of county commissioners, and then expressly requires that such evidence be *considered* by the commissioners in fixing the compensation to be paid deputies and clerks; and inasmuch as that statute gives

boards power to call before them and examine any county officer, or any employee in charge of any office, department, service, agency or institution of the county, for the purpose of supplying any needed, additional evidence, it is clear that the legislature intended that county commissioners could no longer, in the performance of that high and vitally important public duty, act largely, if not solely, upon information coming to them by reason of the performance of their general duties as such commissioners, but that they should be guided by and act upon the evidence before them.

This court in *Reynolds v. Board of Commrs.*, 6 Ida. 787, 59 Pac. 730, and also in *Criddle v. Board of Commrs., supra* (relied upon in the majority opinion), held that upon an appeal from an order of a board of commissioners, fixing salaries of county officers, the true question before the district court is: Did the board of commissioners abuse the discretion vested in it in making the order? In the case at bar, the district court found and adjudged that the appellant board did abuse its discretion in fixing the compensation to be paid respondent clerk of the probate court of Bonneville county. The sufficiency of the findings of fact and conclusions of law is not questioned by appellants. And this court held in the Reynolds case, *supra,* that to determine the question as to whether the board had abused its discretion, "it was necessary to hear evidence bearing upon the numerous points to be considered," as was done in the case at bar. The district judge, in the instant case, had before him the record, evidence and information upon which the board acted under the County Budget Law, in making the compensation order in question, together with much additional testimony submitted in behalf of the board, as well as the documentary evidence and testimony submitted in behalf of the respondent clerk, and in determining whether the board had, or had not, abused its discretion, the trial judge must necessarily have concluded, and, I think, correctly, the legislature intended, by the enactment of the County Budget Law, that county commissioners must thereafter weigh and consider and be guided by and act upon the documentary

evidence before them, quite fully supplied for that purpose, and that the appellant board had failed to do that.

We held in *Steinour v. Oakley State Bank,* 32 Ida. 91, 94, 177 Pac. 843, that "in construing a statute, the purpose is to ascertain and give effect to the intent of the legislature."

And this court held in *Criddle v. Board of County Commrs., supra,* that "an abuse of discretion occurs when the tribunal or board, charged with its exercise, exceeds the bounds of reason, all the circumstances before it being considered" (citing cases), and that "an abuse of discretion . . . . is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence."

This court in the Criddle case, *supra,* unmistakably recognized the right and power of the district court to revise the action of a board of commissioners in fixing salaries, in a case where it was clear that the board had abused its discretion, by quoting with approval the following from an opinion of the supreme court of Wisconsin, in *Northern Trust Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460, 90 Am. St. 867:

"Where it rests in the discretion of the county board to determine what is a reasonable compensation, the court should not revise their action in the absence of clear evidence of such manifest abuse of power and disregard of the statute as to show that the board failed to exercise a legal discretion . . . ."

The district court having found and adjudged, upon evidence which must have appeared to it, and which also appears to me, to be clear and convincing, that the board abused its discretion in fixing the compensation of the respondent clerk at $50 per month, this court ought not to disturb the judgment, under the well settled rule in this state that "findings of fact, made by a trial judge who has had the benefit of observing the demeanor of witnesses upon the stand and of listening to their testimony, will not be disturbed because of conflict, if the evidence in support thereof, if uncontradicted, would be sufficient." (*Indepen-*

*dence Placer Min. Co. v. Knauss,* 32 Ida. 269, 181 Pac. 701. See, also, *Morrison v. Morrison,* 38 Ida. 45, 221 Pac. 156.)

In the majority opinion it is stated that "the board's theory as disclosed by the evidence was that the clerk in the probate court need be employed there only half time, and the other one half could be used in the prosecuting attorney's office or the county superintendent's office, in which event the salary would have been at the rate of $100.00 per month. The evidence further shows that the respondent, Ivaloo Jeppson, was employed by the county as probation officer at a salary of $15.00 per month."

The trouble with that theory of the board and of the majority opinion is, that section 1–1205, I. C. A., vests exclusive power in the probate judge to appoint his own clerk, and makes the probate judge "responsible upon his official bond for every default or misconduct in office of his clerk." In other words, the probate judge is given express power to appoint the person who shall keep the records of his court, a most important court of record where absolute accuracy is required, as the legislature must have fully understood, because it makes the probate judge responsible for the defaults and misconduct of his clerk. If the board may, in its discretion, as held in the majority opinion, require half time employment in the office of the prosecuting attorney, and the other half in the office of the probate judge, then, of course, the board could also, in its discretion, pass the clerk of the probate court around to the various county offices, requiring employment for such days and/or hours, as the board might fix, thereby depriving the probate judge of control of his own clerk, but still holding him responsible for the clerk's acts. And whether the clerk would have time to accurately do the important recording work in the probate court, and thus avoid costly mistakes, would depend upon how much additional work there was to do in the other county offices, or office, as the case might be.

And it is said in the majority opinion that "the evidence covered the field of salaries of similar officials in other counties, and the relative amount of work required of the

clerk of the probate court and other similar positions, both in Bonneville and other counties in the southern and southeastern part of the state.''

It is true that the "evidence covered the field of salaries of similar officials in other counties,'' and it is also quite apparent that from that evidence the trial court concluded that the board abused its discretion in fixing the salary of the clerk at $50 per month, an amount at once suggesting grave difficulties in providing the bare necessities of life.

For these reasons I cannot concur in the majority opinion.

Budge, C. J., concurs in the dissenting opinion.